**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK STRAUSSER,** | : | **No. 3:15cv2458** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **GERTRUDE HAWK CHOCOLATE, INC.,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Mark Strausser (hereinafter "plaintiff") asserts that defendant Gertrude Hawk Chocolate, Inc., (hereinafter "defendant") violated his rights under the Americans with Disabilities Act as amended, 42 U.S.C. § 12101 (hereinafter "the ADA") and the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. ANN. § 951 (hereinafter "the PHRA") by terminating him unlawfully after he completed rehabilitation to treat alcohol addiction.  Before the court is defendant's motion for summary judgment filed pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  The parties have briefed their respective positions and the motion is ripe for disposition.

## Background

The second amended complaint identifies plaintiff as a 48-year-old male who worked as a machine operator for defendant for about eleven (11) months

until he was terminated.  (Doc. 34 pl.  sec.  amend.  compl.  ¶¶ 11, 12).[1]  Plaintiff

worked full-time from August 17, 2014 (Doc. 52 pl. resp. to def. stmnt. mat. fcts.

at 4, ¶ 1) to January 30, 2015.  After rehabilitation, plaintiff returned to work.

Plaintiff contacted defendant's human resources department (herein after

"HR") in December 2014 to express his desire to check into a rehabilitation

facility and request time off work to do so.  (Doc. 47, ¶ 15).  Defendant's HR

department granted plaintiff's request, having knowledge of plaintiff's two motor

vehicle accidents in one day, December 25, 2014, both the result of driving under

the influence.  Id., (see also Doc. 48 at 15).

After rehabilitation plaintiff returned to work.  Plaintiff was terminated by his

production supervisor, Ron Madigan (hereinafter referred to as "Madigan"), on

January 30, 2015 (Doc. 47-5 at 131), his second day back to work after

completing thirty-one (31) days (December 29, 2014 through January 28, 2015)

at Retreat at Lancaster County in Ephrata, Pennsylvania (hereinafter "Retreat"),

(Doc. 47-5 at 50, 55, pl. exh. 4).

Procedurally, plaintiff initiated this lawsuit by filing a complaint on

December 21, 2015 against defendant for violating his rights under the ADA and

PHRA (Doc. 1).  Plaintiff filed an amended complaint, (Doc. 19), on June 20,

---

[1] In this brief background section we cite primarily to undisputed facts and
plaintiff's deposition testimony.

2016,[2] and a second amended complaint on January 17, 2017.  (Doc. 34).

Defendant filed a motion for summary judgment pursuant to Rule 56(a) of the

Federal Rules of Civil Procedure, on July 7, 2017, bringing the case to its current

posture.

**Jurisdiction**

As this case is brought pursuant to the ADA for unlawful employment

discrimination, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts

shall have original jurisdiction of all civil actions arising under the Constitution,

laws, or treaties of the United States.")  The court has supplemental jurisdiction

over plaintiff's PHRA claim pursuant to 28 U.S.C. § 1367(a).

**Standard of review**

Granting summary judgment is proper "'if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.'"  See Knabe v. Boury,

114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)).  "[T]his

standard provides that the mere existence of some alleged factual dispute

_____

[2]See FED. R. CIV. P. 15(a)(1)(B) (providing that "a party may amend its pleading
once as a matter of course within . . . twenty-one (21) days after service of a
motion under Rule 12(b) . . . ."); see also FED. R. CIV. P. RULE 6(d) (stating that
where service is made by electronic means under FED. R. CIV. P. RULE 5(b)(2)(E),
three (3) days are added onto the computation of time).

3

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original). A material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Id.</u>

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u> Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden then shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. <u>Id.</u> at 324.

**Discussion**

Count I of plaintiff's second amended complaint (Doc. 34) alleges the following claims for violations of the ADA: disability discrimination; failure to accommodate; and retaliation. Count II alleges the same claims for violations under the PHRA. Each claim can lead to a separate violation of the ADA. We will examine each claim in turn.

**I Count one- ADA**

**(A) Disability discrimination**

The elements of a discrimination case under the ADA are: (1) Plaintiff is disabled within the meaning of the ADA; (2) Plaintiff is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) Plaintiff has suffered an otherwise adverse employment decision as a result of discrimination. See Wilmore v. American Atelier, Inc., 72 F. Supp. 526, 528 (E.D. Pa. 1999), citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999); Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998). The law forbids employers from discriminating against qualified people with a disability, *because of* their

disability.  42 U.S.C. § 12112(a) (emphasis added).  We will examine the elements in turn.[3]

A plaintiff may assert an ADA disability discrimination claim with direct or circumstantial evidence.  Here, plaintiff alleges that both direct and circumstantial evidence establish his ADA disability discrimination claim.  (Doc. 51 at 7).   We disagree.[4]  Other than what might be considered direct evidence contained in deposition transcripts and other exhibits, plaintiff's disability discrimination claim is based upon circumstantial evidence.

Where the complaining party relies upon circumstantial evidence to support a disability discrimination claim, the Third Circuit Court of Appeals has approved the use of the three-step burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 782, 802 (1973), see Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).

In the first step of the burden-shifting framework, a plaintiff seeking recovery under the ADA must establish a *prima facie* case of discrimination by

---

[3] Defendants do not dispute the second element. (See Doc. 52-7 at 12-13, Pl. Exh. G, deposition of Dina Marie Zangi (defendant's vice president of human resources) (Doc. 51 at 12)).

[4] For example, plaintiff argues that "Proof of causal connection can be established *indirectly* by showing that the protected activity [in a retaliation case] was followed closely by discriminatory treatment."  DeCintio v. Westchester County Med. Cntr., 821 F.2d 111, 115 (2d Cir. 1987) (emphasis in original).  Second Circuit Court of Appeals opinions are non-precedential in this court, and we decline to adopt the reasoning set forth in DeCinto.

demonstrating the three *prima facie* elements noted above. The court will not reach the burden-shifting framework unless plaintiff presents sufficient evidence from which a jury could reasonably conclude that he is disabled within the meaning of the ADA, element (1).

Defendant essentially argues that plaintiff cannot establish a prima facie case of disability under the ADA because his claims of alcohol addiction, drug addiction and mental health flow from the mere fact that he entered a rehabilitation facility, and that plaintiff was terminated for insubordinate behavior.

Plaintiff counters that he is disabled due to alcohol addiction, synthetic marijuana addiction, bi-polar disorder, anxiety, and depression. (Doc. 34 ¶¶ 26-29). Plaintiff disputes that he was insubordinate or terminated for insubordinate behavior, and instead, plaintiff argues that his supervisor, Madigan, unlawfully terminated him because of his disability and request for accommodation. (Doc. 52 ¶ 31). Plaintiff apparently considered his request for time off for rehabilitation treatment to be in the nature of a request for an accommodation.

It is undisputed that plaintiff was under the influence of alcohol and/or drugs when he got into the two motor vehicle crashes on December 25, 2014. (Doc. 47 ¶ 11) (Doc. 52 at 5 ¶¶ 9-15 (admitted facts)). In this case, however, the record does not show that defendant's HR personnel knew of any disability other than drug or alcohol addiction, or of plaintiff's desire for an accommodation for

anything other than time off during rehabilitation treatment for his alcohol addiction.  Defendant received a fax dated January 8, 2015 from Tracey Shaw, outreach specialist at Retreat, advising that defendant was admitted into inpatient care until January 28, 2015, but not mentioning "for what."  (Doc. 52-5).  To establish discrimination because of a disability, an employer must know of the disability.  Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380 (3d Cir. 2002), citing Taylor, 184 F.3d at 313 (discussing 42 U.S.C. § 12112(b)(5)(A)).  Thus, plaintiff cannot establish a *prima facie* case of disability under the ADA for bi-polar disorder, anxiety, or depression.

Accordingly, plaintiff is left with drug or alcohol addiction as his sole argument that he is disabled under the ADA.  If one or the other constitutes a disability, then it would support the first element of his ADA claim as set forth above.  In order to avail oneself of the protections afforded by the ADA, one must first be disabled.  "While courts in other Circuits have held that drug addiction is not a *per se* disability, the Third Circuit has not settled this matter."  RHJ Medical Center, Inc. v. City of DuBois, 754 F. Supp. 2d 723, 755 (W.D. Pa. 2010).  Alcoholism is not a *per se* disability under ADA.  Burch v. Coca-Cola Co., 119 F.3d 305 (5th Cir. 1997), cert. denied 522 U.S. 1084.  We find that, in the Third Circuit, neither alcohol addiction nor drug addiction is a *per se* disability under the

ADA, either alcohol or drug addiction could constitute a disability if, under the facts of a given case, such addiction meets the ADA definition of disability.

Under the ADA, disability means "(A) a physical or mental impairment that substantially limits one or more major life activities . . . (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Thus, one may have a physical or mental impairment that does not substantially limit one or more major life activities, and in that event, such an impairment would not constitute a disability under the ADA. Only under 42 U.S.C §12102 (1)(C) (defining a "regarded as" claim as a possible disability), or in a claim for retaliation, is a plaintiff relieved of the subsection (A) requirement to produce evidence of a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(3)(A) (the actual ADA "regarded as" provision).

For purposes of section 12102(1)(A) . . .

> [M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. A major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

42 U.S.C. § 12102(2)(A), (B).

In this case, while plaintiff may be impaired, the record as a whole reveals no evidence of a physical or mental impairment that substantially limits any of plaintiff's major life activities. A review of the entire docket record including plaintiff's records from Retreat (Doc. 52-4, Exh. D), which was filed along with his brief in opposition (Doc. 52) to the instant motion for summary judgment, (Doc. 46), reveals no evidence of such limitation. A psychological clinical assessment dated December 29, 2014, the date defendant reported for rehabilitation, is based on self-reporting by plaintiff, and signed by Kenisa Helm, an admissions counselor. (Doc. 52-4, Exh. D at 12-16). The following appears under the general heading Problems Related to Addiction:

> 70. Medical problems related to addiction: blackouts, tremors/shakes. 71. Please explain and specify: Pt states that he has experienced blackouts in the past and tremors/shakes when withdrawing. Trouble falling asleep, trouble staying asleep, loss of appetite, weight loss. Pt states that he has trouble sleeping and is unable to eat when using. Relapsed 12/24/14.[5]

(Id. at 13).

Plaintiff's records from Retreat contain no mention of drug addiction, alcohol addiction, or what he relapsed from. Furthermore, at Retreat plaintiff stated to Frank DeLia, M.D., that he was there "to take care of his problem with smoking synthetic marijuana," that he had been clean and sober from alcohol for

---

[5] We understand that "Pt" is shorthand for "patient," the plaintiff in this case.

approximately twenty (20) years, that he overcame his alcohol dependency issues after having been jailed several times and that he quit drinking at that time because, "[He] no longer wanted to go to jail." (Doc. 52-4 at 18, Retreat progress note dated December 30, 2014 and signed by Dr. DeLia).

Defendant argues that plaintiff, in his responses to the instant motion for summary judgment, claims for the first time in the history of this case, with no evidence, that he has mental conditions that "substantially interfere with . . . [his] daily activities[6], including, but not limited to sleeping, driving, interacting with others, working and concentrating." (Doc. 53 at 3, 4, Doc. 50 at 15). We agree, and find no issue of material fact from which a reasonable jury could find that plaintiff has presented a *prima facie* case of disability within the meaning of 42 U.S.C. §12102(1)(A). Thus, because we find that plaintiff is not disabled within the meaning of the ADA, we will grant defendant's motion for summary judgment on Count I- ADA disability.

---

[6] In support of its argument that plaintiff claims "he is disabled due to addiction and mental health issues and/or merely because he entered a rehabilitation facility," but with no citation to the record, defendant points to plaintiff's deposition, in which defendant claims plaintiff testified that he is not substantially limited in one or more major life activity. We would accord no weight to such testimony because it contains legal terms of art. As such, we decline to hold a layman to the high standard of recognizing what constitutes life activity limitations and their significance under the complexities of employment law.

**(B) ADA- "Regarded as" claim**

Next, we will address whether defendant regarded plaintiff as disabled despite plaintiff not having a disability. To meet the "regarded as" test, [plaintiff] "must show that [an employer] thought [he was] disabled 'within the meaning of the [ADA] statute.'" Wilson v. MVM, Inc., 475 F.3d 166, 179 (3d Cir. 2007) (quoting Rinehimer, 292 F.3d at 381).

The elements of a "regarded as" claim are: (1) [An individual] has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such impairment; (2) [An individual] has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) [An individual] has no such impairment but is treated by [employer] as having a substantially limiting impairment. 42 U.S.C. § 12102(3), Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 187 (3d Cir.1999) (citing 29 C.F.R. § 1630.2(l)) (emphasis and citations omitted).

In Rinehimer, the appellate court stated that "the District Court correctly noted that to be covered under the 'regarded as' prong of the ADA the employer must 'regard[ ] the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled.'" Rinehimer, 292 F.3d at 381.

Thus, in order for plaintiff to have a "regarded as" claim under the ADA, defendant must have regarded or "treated" him as suffering from an impairment listed in 42 U.S.C. 12102(2)(A) or 42 U.S.C. 12102(2)(B).  The record clearly shows defendant knew plaintiff was in rehab before he was terminated, but merely seeking and completing treatment, in this case for use of synthetic marijuana, does not lead to the conclusion that defendant regarded him as impaired at the time he was terminated.  Plaintiff, in fact, does not argue that the attitudes of "others" are in play at all, let alone regarding any impairment that might satisfy the second element of a "regarded as" claim under the ADA.  Even if defendant viewed plaintiff as impaired, plaintiff has presented no evidence to suggest that the defendant regarded him as disabled within the meaning of the ADA—that is, that defendant believed that plaintiff's substance abuse substantially limited one or more of her major life activities.

We find no issue of material fact from which a reasonable jury could conclude that defendant regarded or "treated" plaintiff as suffering from an impairment listed in 42 U.S.C. 12102(2)(A) or 42 U.S.C. 12102(2)(B).  Thus, defendant's motion for summary judgment will be granted on Count I- ADA "regarded as" claim.

### (C) ADA- failure to accommodate claim

Next we address plaintiff's clam that defendant failed to accommodate him. A plaintiff may satisfy the elements of a prima facie case of failure to accommodate under the ADA by demonstrating (1) he is a disabled person within meaning of ADA, (2) he is otherwise qualified to perform essential functions of the job, with or without reasonable accommodations by employer, and (3) he has suffered otherwise adverse employment decision as result of discrimination; 'adverse employment decisions' in this context include refusing to make reasonable accommodations for employee's disabilities." Solomon v. School Dist. of Phila., 882 F. Supp. 2d 766, 776 (E.D. Pa. 2012), Gaul, 134 F.3d at 580.

Any independent claim for failure to accommodate cannot withstand summary judgment in this case because plaintiff has failed to establish that he is a disabled person within the meaning of the ADA. Thus, defendant's motion for summary judgment will be granted on Count I- ADA failure to accommodate claim.

### (D) ADA- retaliation claim

Plaintiff claims defendant unlawfully retaliated against him by a failure to accommodate. His argument in support thereof is obscured by a lack of legal analysis and the fog of legal conclusions.

To establish a prima facie case of retaliation claim under the ADA plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Gera v. County of Schuylkill, 617 Fed. App'x. 144, 147 (3d Cir. 2015); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).

> Unlike a plaintiff in an ADA discrimination case, a plaintiff in an ADA retaliation case need not establish that he is "qualified individual with a disability." Krouse, 126 F.3d at 502. "Thus, as opposed to showing disability, a plaintiff need only show that he had a reasonable good faith belief that he was entitled to request the reasonable accommodation he requested," Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 n. 2 (3d Cir. 2004), and a plaintiff . . . may pursue a retaliation claim even though he failed to establish that he is disabled within the meaning of the ADA, see Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 188.

Larkin v. Methacton School Dist., 773 F. Supp. 2d 508, 528 (E.D. Pa. 2011)

Plaintiff argues, and we agree, that a request for a leave of absence may be considered to be a reasonable accommodation. Fogleman v. Greater Hazleton Health Alliance, 122 Fed. App'x. 581, 585 (3d Cir. 2004), (Doc. 51 at 16). "[T]he federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned, explicitly or implicitly, that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the near future."

Id., quoting Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004). Such reasoning is in accord with the case at bar.

Here, though, it is undisputed that plaintiff requested a leave of absence for rehabilitation; defendant granted him a leave of absence for rehabilitation; plaintiff in fact underwent rehabilitation; he then returned to work, and upon his return to work, plaintiff performed his essential job functions. We would agree that plaintiff's request for an accommodation in the form of a leave of absence for rehabilitation could have been a protected employee activity, and that time off would be a reasonable accommodation. But defendant granted time off, plaintiff availed himself of it, attended rehabilitation, and then returned to work. There is no need to reach the question whether plaintiff had a reasonable good faith belief that he was entitled to request the reasonable accommodation he requested, because defendant did not deny the reasonable accommodation of time off for rehabilitation. Furthermore, it is illogical to argue that the adverse employment action – plaintiff's termination – is causally connected to a reasonable accommodation that was requested, granted, and used.[7] We find such an argument is non-justiciable for lack of an adversarial issue.

Plaintiff, however, argues that the protected activity in this case was actually comprised of two prongs: (1) requesting and taking time off; *and* (2)

---

[7] Plaintiff argues only one adverse employment action: his termination on January 30, 2015, which is undisputed.

requesting that defendant excuse his absences. (Doc. 51 at 17) (emphasis added). Clearly, plaintiff was allowed to return to work after his stay at Retreat; he was present in the building and on the job on January 29 and 30, 2015. Plaintiff testified at deposition that he called Brook Lipperini in defendant's HR department after his car crash and told her he was going to check into rehabilitation, and her reply was, "Well, go ahead, get yourself better and we'll see you when you come back." (Doc. 47-1 at 7). We find that defendant did excuse plaintiff's absences *from work.*

Plaintiff, however, seems to argue that the words "excuse his absences," mean that Madigan should have removed the attendance points at his request. Thus, examining the briefs in the light most favorable to the party opposing the motion, we find that plaintiff is *trying* to argue that while defendant accommodated his absence for rehab, it then retaliated against him by failing to excuse the attendance points.

The question remains: why did the employer take an adverse employment action against plaintiff? Termination is the sole adverse employment action alleged in this case. Plaintiff presents no evidence from which a jury could reasonably conclude that plaintiff was terminated for requesting removal of the attendance points.

Plaintiff admitted at deposition that he received a copy of defendant's employee handbook, he understood and signed the attendance policy, and acknowledged that if he was going to be absent from work he had to "follow the proper call-off procedure by contacting a phone number no later than one hour before [his] shift [began]." (Doc 47-1 at 4, 5). Plaintiff further understood that he was assigned points from December 29, 2014 to January 28, 2015 when he returned to work. (Id. at 9). He understood that he could be terminated if he accumulated 12 points and that he had accumulated 10.75 points as of January 30, 2015. (Id.) He understood that a 10.75 point accumulation was not enough to be terminated [for attendance points]. (Id. at 10, Exh. 3 (letter listing attendance points)).[8]

After opening the attendance points letter (Doc. 47-1, Exh.3) on January 30, 2015, plaintiff testified he went to Madigan's office to discuss the attendance points and the conversation "got a little heated from there . . ." (Id. at 10). Before being fired plaintiff admits being very upset. (Id.) On direct examination at deposition plaintiff described the encounter with Madigan:

> Q. I want you to take me from the beginning of the conversation. You said you walked in and you asked why you were being assessed points for being in a

---

[8] Defendant's attendance point policy sets forth that one point would be issued for 6.01-to-8 hours in an 11.5-hour shift (see Doc. 47-6 at 1-2). Plaintiff testified that he worked 12-hour shifts (Doc. 47-1 at 7). It is unclear why plaintiff's point accumulation totaled 10.75 on January 30, 2015.

> rehabilitation center, and he said that's our policy. When did you say then?
>
> A. I said, "It's very unfair. I wonder what an attorney would say," you know. And that escalated from there. He said he didn't, you know, want me in his factory anymore. And I asked him, I said, "Well, what am I being fired for?" He said, "Well, let's see. Let's just say lack of work." And he walked me out.

(Id. at 43).

We find that no reasonable jury would conclude that plaintiff was terminated for any reason other than what he said to his supervisor while insisting that the attendance points be removed. When Madigan refused, plaintiff could have gone to HR with the same request. He seemed to have a good rapport with Brook Lipperini. Instead, he said to Madigan, "I wonder what a lawyer would think." At that point Madigan became angry and terminated plaintiff for insubordination.[9]

Uttering the words "I wonder what a lawyer would think" might be a protected activity in a wholly different factual scenario, for example, a detainee's response to police questioning in a civil rights case. The circumstances under which those words were spoken in the ADA case before us, however, involved an angry at-will employee arguing with his angry supervisor. We find that

---

[9] At deposition Madigan denied terminating plaintiff (Doc. 47-5 at 31) but admitted plaintiff didn't report to work the next day (Id. at 47). Madigan also admitted he would not have allowed plaintiff to stay at work had he reported the next day (Id.) Viewing this testimony in the light most favorable to the non-moving party, we find that Madigan terminated plaintiff.

plaintiffs utterance of the worlds "I wonder what a lawyer would think," under the facts in this case, is not a protected employee activity, but indeed insubordination as defendant argues. Plaintiff's retaliation claim fails at element (1) – protected employee activity.

Notably, plaintiff's retaliation claim fails at element (3), as well – a causal connection between the employee's protected activity and the employer's adverse action. Plaintiff relies only on temporal proximity to establish this causal link. Plaintiff's reliance on temporal proximity is misplaced. "[The Third Circuit has] held in the ADA retaliation context that 'temporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link.'" Williams, 380 F.3d 760, Shellenberger, 318 F.3d at 183 (quoting Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997) (internal quotation marks omitted). Here, plaintiff's retaliation claim cannot withstand summary judgment because the *operative* causal link was that between an *unprotected employee activity*, his angry words with his supervisor, and the termination. Thus, summary judgment will be grated on Count I- ADA retaliation claim.

## II. Count II- PHRA

Pennsylvania courts interpret the PHRA in the same manner as its federal counterparts such as Title VII. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) ("Pennsylvania courts...generally interpret the PHRA in accord with its

federal counterparts...").  Thus, PHRA violations are subject to the same analysis as ADA and Title VII claims, and no separate analysis is required.  <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296, 306 (3d Cir. 1999); <u>Gomez v. Allegheny Health Servs., Inc.</u>, 71 F.3d 1079, 1083-84.  Thus, we will grant defendant's summary judgment motion on Count II, the PHRA claim.

**Conclusion**

After a careful review, we find that plaintiff's claims are unsupported by evidence from which a reasonable jury could find defendant's intent underlying the termination to be a pretext for firing him because of a disability.  Plaintiff has failed to raise any genuine issue of material fact, such that summary judgment is proper in this case.  Thus, we will grant defendants' motion for summary judgment on all claims contained in Counts I and II of the plaintiff's second amended complaint, including punitive damages claims.  An appropriate order follows.

**Date: March 26, 2018**                    **s/James M. Munley**
                                                          **JUDGE JAMES M. MUNLEY**
                                                          **United States District Court**